**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ryan Christopher Goff, | No. CV-25-04537-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Kini L.E. Knudson et al., | |
| Defendants. | |

Pending before the Court is Defendant Kini L.E. Knudson[1] and the City of Phoenix's (collectively, Defendants)[2] Motion to Dismiss Plaintiff Ryan Christopher Goff's Second Amended Complaint ("SAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 20). The Motion is fully briefed, (Docs. 22, 23), and the Court now rules.

## I.    BACKGROUND

The following summary of facts is taken from the SAC (Doc. 11)[3] and the Court construes the facts alleged therein in the light most favorable to the Plaintiff, accepting all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

---

[1]    Plaintiff sues Kini L.E. Knudson in his official capacity as Director of the Street Transportation Department of the City of Phoenix.

[2]    All other defendants have been terminated from this action.

[3]    "An amended complaint supersedes the original complaint." *CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1274 (9th Cir. 2021) (internal quotations omitted); *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010).

Plaintiff is a "qualified individual with a disability" that impairs his mobility and he ambulates with a cane. (Doc. 11 at 2, ¶ 5). Plaintiff alleges that the public street, curb ramp, and pedestrian right-of-way adjacent to his home experience "recurring flooding" when it rains. (Doc. 11 at 3, ¶ 10). When the flooding occurs, the standing water obstructs "safe cane-assisted passage," and Plaintiff cannot safely access the sidewalk or his vehicles. (Doc. 11 at 3, ¶¶ 12–13). The flooding has occurred since at least 2021 and caused damage to Plaintiff's vehicles. (Doc. 11 at 3, ¶¶ 14–15). In response to the flooding damage, Plaintiff submitted a claim to the City of Phoenix's Risk Management Office. (Doc. 11 at 3, ¶ 16). The City denied Plaintiff's claim on September 30, 2021. (Doc. 11 at 3, ¶ 17). Plaintiff alleges that the denial constitutes "actual notice" of the flooding impacting Plaintiff's property and that "no grading correction or drainage modification was implemented" despite the notice. (Doc. 11 at 3, ¶¶ 18, 20).

Plaintiff alleges that Defendants, by failing to take corrective action, violated Title II of the Americans with Disabilities Act (the "ADA") (Count 1). (Doc. 11 at 4). Plaintiff also alleges a *Monell* claim under 42 U.S.C. § 1983 (Count 2). (Doc. 11 at 4). Defendants move to dismiss Plaintiff's SAC for failure to state a claim under Rule 12(b)(6). (Doc. 20).

## II.    LEGAL STANDARD

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The United States Court of Appeals for the Ninth Circuit has instructed that courts

- 2 -

must "construe pro se filings liberally" and give such plaintiffs the "benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotations and citation omitted). A complaint filed by a pro se litigant "must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). "A liberal construction of a pro se complaint, however, does not mean that the court will supply essential elements of a claim that are absent from the complaint." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022).

## III.    DISCUSSION

### A.  ADA Violation

Plaintiff alleges that Defendant City of Phoenix "provides public sidewalk and pedestrian right-of-way services" and that the recurring flooding near his home "obstructs the pedestrian path of travel." (Doc. 11 at 4, ¶¶ 25–26). Plaintiff claims that the City had notice of the flooding and that the City's failure to take reasonable corrective measures constituted "deliberate indifference" to Plaintiff's rights under the ADA. (Doc. 11 at 4, ¶¶ 27–28).

Defendants primarily argue that the City of Phoenix was not required to make the sidewalk outside Plaintiff's home "accessible to and usable by individuals with disabilities" because the sidewalk is an "existing facility" and subject to the ADA's implementing regulations' safe harbor provision. (Doc. 20 at 5); *see also* 28 C.F.R. § 35.150(b)(2)(i). The safe harbor provision provides:

> Elements that have not been altered in existing facilities on or after March 15, 2012 and that comply with the corresponding technical and scoping specifications for those elements in either the 1991 Standards or in the Uniform Federal Accessibility Standards (UFAS), Appendix A to 41 CFR part 101–19.6 (July 1, 2002 ed.), 49 FR 31528, app. A (Aug. 7, 1984) are not required to be modified in order to comply with the requirements set forth in the 2010 Standards.

28 C.F.R. § 35.150(b)(2)(i).

The ADA thus distinguishes between existing facilities that were not altered on or after March 15, 2012 and newly constructed facilities. (Doc. 20 at 4). *Compare* 28 C.F.R. § 35.150 (existing facilities) *with* 28 C.F.R. § 35.151 (new construction and alterations).

Defendants direct the Court to the Maricopa County Assessor's website—which states Plaintiff's home was constructed in 1958—and state that "the Court may take judicial notice that the subdivision dates back to the late 1950s and early 1960s." (Doc. 20 at 4). Defendants note that the SAC "does not allege that the subject sidewalk or drainage facilities were installed or modified *on or after* March 15, 2012," and contend those facilities are "existing facilities" that need not be modified to comply with the ADA. (Doc. 20 at 4–5). Because Plaintiff's flooding complaints do not "fall within the purview of the ADA for existing facilities," Defendants argue that he fails to state an ADA claim. (Doc. 20 at 5–6).

Plaintiff's Response fails to address or refute Defendants' existing-facilities argument. (*See generally* Doc. 22). Defendants seemingly ask this Court to accept that Plaintiff's home was built in 1958, and from that fact alone, further conclude that (1) the subdivision, its drainage systems, and the public sidewalks therein were likewise constructed in the late 1950s or early 1960s, and (2) neither the drainage system nor the sidewalks have been altered on or after March 15, 2012. *See* 28 C.F.R. § 35.150(b)(2)(i) (limiting safe harbor provision to "[e]lements that have not been altered in existing facilities on or after March 15, 2012"). Defendants have not submitted evidence establishing either proposition.[4] On the present record, the Court will not make such sweeping factual conclusions regarding the applicability of the ADA's safe harbor provision.

For purposes of resolving the pending Motion, the Court assumes without deciding that the safe harbor provision does not apply and separately analyzes whether Plaintiff has plausibly stated an ADA claim.

### i.  Legal Standard

Title II of the ADA prohibits a public entity from discriminating against a disabled

---

[4]    Even if Defendants had submitted such evidence, courts are generally barred from considering evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 743 F. Supp. 3d 1083, 1095 (D. Ariz. 2024).

individual based on their disability. 42 U.S.C. § 12132. To state a Title II ADA claim, a plaintiff must plead facts plausibly showing that: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination *was by reason of his disability*." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017) (internal quotations and citation omitted) (emphasis added). "As to the third requirement, [p]laintiffs must show that the exclusion, denial, or discrimination was 'solely by reason of disability.'" *Golden Gate Transactional Indep. Serv., Inc. v. California*, CV 18-08093 SJO (AGRx), 2019 WL 4222452, at *18 (C.D. Cal. May 1, 2019).

A plaintiff seeking monetary damages under the ADA "must prove intentional discrimination on the part of the defendant." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). Proving intentional discrimination requires a plaintiff to show that the defendant acted with "deliberate indifference," which requires "both [(1)] knowledge that a harm to a federally protected right is substantially likely, and [(2)] a failure to act upon that [] likelihood." *Id.* at 1139; *see also Updike*, 870 F.3d at 950–51. A plaintiff satisfies the first element of the deliberate-indifference test by notifying the public entity of his need for accommodation. *Updike*, 870 F.3d at 951. "To meet the second [element], the entity's failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* (internal quotations omitted).

### ii.  Analysis

Plaintiff fails to state a Title II ADA claim because Plaintiff has not alleged he was "denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity" *by reason of his* "*disability*."[5] Moreover, even

---

[5]    And while Defendants do not dispute that Plaintiff if a "qualified individual with a disability," the Court finds that Plaintiff has not plausibly alleged that he has a disability as defined by the ADA. A "qualified individual with a disability" refers to an individual with a disability who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C.A. § 12131. The ADA defines "disability" as "a physical or mental impairment that substantially

assuming Plaintiff had otherwise stated an ADA violation, Plaintiff has not plausibly alleged the deliberate indifference necessary to recover monetary damages. Specifically, Plaintiff has not alleged that he ever sought an accommodation from Defendants or otherwise notified Defendants of his alleged disability to plausibly plead the notice element of the deliberate-indifference test. Indeed, the SAC does not allege that Defendants knew Plaintiff was disabled. Instead, the evidence attached to the SAC and Defendants' Motion to Dismiss suggests that Plaintiff only notified Defendants of damage to his vehicles and sought compensation for those damages.

### 1. 2025 Notice of Claim

Plaintiff attached to the SAC a Notice of Claim—dated March 19, 2025—that he submitted against the City of Phoenix (the "2025 Notice").[6] (Doc. 11 at 27). Plaintiff submitted the 2025 Notice "for damages sustained due to repeated flooding caused by the City's negligence in maintaining its drainage infrastructure." (Doc. 11 at 27). The 2025 Notice alleged that in August 2021 and December 2023, "severe flooding" occurred at Plaintiff's home which "result[ed] in the total loss of three vehicles." (Doc. 11 at 27). The

limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* 12102(2)(A). The ADA does not define the phrase "substantially limits," but it is understood to mean that an individual's ability to perform a particular major life activity is significantly restricted when compared to most people in the general population. *See* 29 C.F.R. § 1630.2(j)(ii).

Plaintiff merely alleges that he "is a qualified individual with a disability and ambulates with a cane due to mobility impairment." (Doc. 11 at 2, ¶ 5). This barebones allegation, without more, is merely a legal conclusion couched as a factual allegation, which the Court need not accept as true on a motion to dismiss. *Ashcroft*, 556 U.S. at 678. Because Plaintiff fails to plausibly plead that he has a qualifying disability under the ADA, he fails to state a claim for relief. *See Goekjian v. City of Portland*, 3:25-CV-00727-AR, 2025 WL 4670414, at *4 (D. Or. Dec. 16, 2025), *report and recommendation adopted,* 3:25-CV-00727-AR, 2026 WL 892959 (D. Or. Mar. 31, 2026) (finding plaintiff failed to state a claim under the ADA because plaintiff did not explain how his physical impairments—"a fractured L5 vertebra, shattered bones in the left ear, and resulting seizure disorder and mobility impairments"—substantially limited one or more major life activities).

[6]    A court may consider evidence that has been "incorporated, either literally or by reference, into the plaintiff's complaint" without converting a motion to dismiss into a summary judgment motion. *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 746 F. Supp. 3d 749, 755 (D. Ariz. 2024).

2025 Notice alleged that the City failed to take remedial action which exacerbated the damage to Plaintiff's vehicles. (Doc. 11 at 27). The 2025 Notice demanded "compensation for property damage," "reimbursement for additional economic losses," and "non-economic damages for inconvenience and distress." (Doc. 11 at 27).

The 2025 Notice contains no reference to Plaintiff's alleged disability. Any alleged exclusion, denial of benefits, or discrimination against Plaintiff cannot be by reason of Plaintiff's disability if Defendants were unaware of its existence. And the 2025 Notice does not seek an accommodation for Plaintiff's alleged disability—it seeks money damages only.[7]

### 2. Claim to the City of Phoenix Risk Management Office in 2021

Before the 2025 Notice of Claim, the SAC alleges that Plaintiff "submitted a claim to the City of Phoenix Risk Management Office regarding flooding damage" and that *that* claim was denied on September 30, 2021. (Doc. 11 at 3, ¶¶ 16–17). Plaintiff does not specify when he filed the initial claim resulting in the September 30, 2021 denial, nor does he attach that claim to the SAC. Plaintiff does, however, attach the City's denial letter.[8] (*See* Doc. 11 at 18). The denial letter states that the City of Phoenix was "sorry to hear about the damage to [Plaintiff's] vehicles" and assured Plaintiff that the City had carefully considered his claim. (Doc. 11 at 18). The letter explains that "torrential rains" on July 25, 2021 "generated an excessive amount storm run-off that exceeded the capacity of the storm drains" but that the City had received confirmation from the Street Department that "there is no malfunction with the operation of the storm system and [that] the storm drains are regularly maintained and cleaned." (Doc. 11 at 18). Because there was no defect with the storm drainage system, the letter concluded that the City was not legally responsible for

---

[7]    Plaintiff does not indicate whether the City of Phoenix responded to the 2025 Notice.

[8]    A court may consider evidence that has been "incorporated, either literally or by reference, into the plaintiff's complaint" without converting a motion to dismiss into a summary judgment motion. *Ctr. for Biological Diversity*, 746 F. Supp. 3d at 755.

the damage caused to Plaintiff's vehicles and advised that his claim was ineligible for payment.

As stated, Plaintiff did not attach the underlying claim that resulted in the September 30, 2021 denial. Accordingly, this Court cannot determine whether Plaintiff informed the City of his alleged disability or requested an accommodation for that disability. However, the Court notes that the denial letter—which exclusively discusses damage to Plaintiff's vehicles and Plaintiff's request for payment—indicates that the City understood Plaintiff's claim as seeking compensation for property damage resulting from flooding, not relief related to his alleged disability.

### 3. Complaint Filed in Maricopa County Superior Court

Attached to Defendants' Motion to Dismiss is a Complaint that Plaintiff filed in Maricopa County Superior Court on April 11, 2025.[9] (Doc. 20-1). Therein, Plaintiff alleged the following facts only:

> On or about August 9, 2021, and again on December 28, 2023, Plaintiff's vehicles and property were severely damaged due to repeated street flooding caused by Defendant's failure to inspect, repair, or maintain drainage infrastructure. Despite prior notice, emails, and neighborhood complaints, the City took no action.

(Doc. 20-1 at 4). Plaintiff requested $112,583 in compensatory damages and injunctive relief "requiring repairs and prevention measures." (Doc. 20-1 at 8). Defendants argue that "Plaintiff's initial lawsuit focused on property damage—not accessibility." (Doc. 20 at 8). The Court agrees. Like the 2025 Notice of Claim and the City's September 30, 2021 denial letter, the state-court Complaint does not assert Plaintiff's disabled status or otherwise allege that he notified Defendants of his disability. Instead, the Complaint seeks compensation and injunctive relief based on alleged flooding and resulting property damage.

---

[9] A court may consider evidence that the court has judicially noticed without converting a motion to dismiss into a summary judgment motion. *Ctr. for Biological Diversity*, 746 F. Supp. 3d at 755. The Ninth Circuit Court of Appeals permits courts to "take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Accordingly, the Court takes judicial notice of Plaintiff's Complaint filed in Maricopa County Superior Court. (*See generally* Doc. 20-1).

Accordingly, the Court finds that the SAC does not plausibly support an inference that Defendants were aware of Plaintiff's alleged disability or any need for accommodation before Plaintiff filed suit in this Court.

### iii.  Conclusion re: ADA Claim

Because Plaintiff fails to plausibly allege (1) that he has a qualifying disability under the ADA, or (2) that Defendants denied Plaintiff the benefits of its "services, programs, or activities" or otherwise discriminated against Plaintiff *by reason of his disability*, Plaintiff fails to state a claim under Title II of the ADA. The Court will grant Defendants' Motion to Dismiss as to this claim.

### B.  *Monell* Claim

Plaintiff alleges that Defendants' failure to "authorize corrective remediation" after receiving notice of Plaintiff's flooding issues was "deliberate inaction constitut[ing] official municipal policy" under *Monell*. (Doc. 11 at 4, ¶¶ 31–32). Plaintiff claims the municipal policy deprived him of his "federally protected rights." (Doc. 11 at 5, ¶ 33). Defendants argue that Plaintiff's *Monell* claim is fatally flawed because *Monell* claims are contingent upon an underlying constitutional violation and the SAC fails to allege such a violation. (Doc. 20 at 3). The Court agrees.

To bring a § 1983 claim against the City of Phoenix under *Monell*, Plaintiff must establish: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

Plaintiff does not identify "a constitutional right of which he was deprived" through Defendants' conduct or inaction. Rather, Plaintiff asserts in conclusory fashion that he was deprived of his "federally protected rights," which is wholly insufficient to survive a motion to dismiss. *See Ashcroft*, 556 U.S. at 678. And while a "policy of inaction" can serve as a basis for § 1983 liability, *Garcia v. Yuba Cnty. Sheriff's Dep't*, 559 F. Supp. 3d

1122, 1127 (E.D. Cal. 2021), it appears that Defendants took at least some action in response to Plaintiff's complaints. Indeed, attached to the SAC is an email from Defendant Kini L.E. Knudson outlining various "commitments" he made in response to Plaintiff's flooding concerns. (Doc. 11 at 11 (noting the need to organize a drainage study and "evaluate repair and cost options" upon receipt of the study results)). And Plaintiff's Response to Defendants' Motion identifies "ongoing municipal involvement" related to his complaints. (Doc. 22 at 2). Plaintiff specifically notes that "[t]he Office of Councilwoman Laura Pastor coordinated meetings with the Streets Department and the City officials regarding Plaintiff-related concerns." (Doc. 22 at 2). The Court finds it difficult to square Plaintiff's allegations regarding Defendants' alleged "deliberate inaction" with Plaintiff's own admissions regarding the City's involvement regarding his claims.

In the Court's view, mere dissatisfaction with the manner in which a municipality resolves a constituent's grievance does not constitute a policy of inaction for purposes of pleading a § 1983 *Monell* claim. Plaintiff fails to state a *Monell* claim and the Court will grant Defendants' Motion to Dismiss.

### IV.    LEAVE TO AMEND

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, Inc., 806 F.2d 1393, 1401 (9th Cir. 1986); *see* Fed. R. Civ. P. 15(a). However, "[l]eave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. *Moore*, 885 F.2d at 538.

This Court, in previously granting Plaintiff leave to amend, advised Plaintiff that his

case would be dismissed if he failed to timely file an amended complaint curing the deficiencies identified in the Court's order.[10] (Doc. 10 at 5). Defendants argue that amendment would be futile because Plaintiff has had three opportunities[11] to state a plausible claim and has failed to do so. The Court agrees and will deny leave to amend the Complaint for a third time.

### V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 20) is **granted** and this case is dismissed, with prejudice, for failure to state a claim upon which relief can be granted, as specified above. The Clerk of the Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's remaining pending motions (Docs. 13, 25, and 26), and Defendants' pending motion (Doc. 28) are **denied** as moot.

Dated this 30th day of June, 2026.

James A. Teilborg
Senior United States District Judge

---

[10]    The Court specifically noted that Plaintiff's first amended complaint "fail[ed] to allege the nature of his disability" and "fail[ed] to allege his requested accommodation (or how it was presented to each Defendant)." (Doc. 10 at 4). Plaintiff's SAC failed to address these issues despite the Court's explicit identification of these deficiencies.

[11]    Plaintiff amended his Complaint once as a matter of course under Rule 15(a)(1)(A), (Doc. 6), and again upon leave of the Court, (Doc. 10 (granting leave to file a second amended complaint)).